20-3034. United States of America v. Chauncey Allen Jones Appellant. Mr. Lollor for the appellant. Mr. Hobell for the appellant. Good morning. Good morning, Your Honor. And is it Lawler? Lawler is correct, Your Honor, yes. All right, Mr. Lawler, you may proceed when you're ready. Thank you, Your Honor. Your Honor, in this case, we believe that the police lacked reasonable articulable suspicion to stop and detain Mr. Jones shortly after hearing a call for shots fired. We believe that because the police lacked reasonable articulable suspicion, the lower court should have granted Mr. Jones motion to suppress the evidence retrieved from that stop and that his conviction should be reversed. In this case, Your Honor, although the government, as we said in our reply brief, teases out a number of what we submit are innocuous facts. We believe that the only relevant facts here that the police possessed at the time they encountered and ultimately stopped Mr. Jones were a call for shots fired and Mr. Jones being in the vicinity of the call for shots fired. This sort of a vigorous debate about whether or not he was walking swiftly or walking at a normal gait, if you will. But we submit that even that fact, if viewed as the government contends that he was walking swiftly, still does not give rise to reasonable articulable suspicion in this case. Well, it's not just the government's contention. It's the district court's finding. It is, Your Honor. And as I indicated, I think this is a case where the body worn camera is in evidence. It's part of the record. It speaks for itself. And I, I certainly submit, notwithstanding, as I said, sort of an appellate standard review that, you know, when you have something that the court here itself can can review and make a decision on that. It's not subject to interpretation. I think in Fourth Amendment land, we tend to use particular verbiage walking briskly, blading, furtive gesturing that are subject to some interpretation. But be that as it may, even if the court finds that it is sort of hands are tied, if you will, by the lower court's finding. We still don't believe that that fact walking swiftly near an area where shots are fired gives rise to a reasonable articulable suspicion that Mr. Jones is the person who committed the crime. We don't, we don't doubt as we said below and as we've indicated here number one that shots were fired. You know, the government again, you know, there's some debate about how proximate the science is in terms of, of pinpointing exactly where those shots were fired. But as I indicated, again, if the court is satisfied number one that shots were fired, which it should be, there's no debate about that. Number two that there's a there's a proximate block that where those shots came from. We don't have any debate about that. And again, if you look at officer turn. So you're down to one block, and the officers arrive, one to two minutes after the shots are fired. And it's late at night so there are few if any people on the street and Jones's on the street. Correct. You have any case on those facts that doesn't wouldn't doesn't find reasonable suspicion. Well, Your Honor, as we indicated, a lot of these facts we believe are completely innocuous and don't, you know, facts get cited in cases of being relevant to it to a particular determination. It is late at night but we don't believe that that fact is particularly germane against shots were fired and certainly is late at night. If there were, if there were 100 people on the street, maybe it wouldn't tell you very much that Jones was on the street. And I'm certainly not. I'm certainly not saying that Jones presence in the area isn't of some value, of course it is. And the fact that no one else is there is of some value. But when you look at the totality of the facts does this give rise to a reasonable article suspicion that Mr. Jones is the person who fired the shots, and that's where we believe that it does not, we obviously are relying heavily on Delaney. But if you look at Officer Turner's testimony. What, what she indicates is that they heard the shots fired they went to the place where they believe the shots were fired they found Jones proximate to the, to the location but not at the specific location. And what they say to your honors that he's walking swiftly that's when they first see him. So I do believe that this is a circumstance where you're taking an innocuous fact and trying to make it look as if it is somehow indicative of evidence of a crime, but when the officer first observes Mr. Jones. She says that he's walking briskly so we never, there's no change in his gate. And so this is one of those instances where we believe the government has taken an innocuous fact, the speed at which Mr. Jones walks and turning into something that it is not, which is evidence of Mr. crime because the circumstance that would make that suspicious as if his gate change the speed of his gate. I see the police and I begin to walk more quickly. What we have here is the static speed if you will Mr Jones is walking at a particular speed. Again, you know briskly, we believe is somewhat of a term of art and a loaded term and the court can observe Mr Jones gate for itself. What about Mr Lawler, the fact that Mr Jones does not promptly respond. When officer Turner calls out to him repeatedly. And, you know, you point out well he's wearing headphones and the district judge acknowledged and officer Turner acknowledged that actually she pretty quickly when he turned and took them out realize that he was wearing headphones but the, the point that your brief doesn't really contend with is that it was reasonable for her initially because he was wearing a hood to not necessarily assume that he was listening to headphones but to feel like he was not responding to her. So that was a, you know, it's like a speeding up fact to have someone walking and ignoring a police officer calling. Right, but I think again when we're looking at the totality of the facts. I don't think we should just look at them in a vacuum to determine whether or not they are in fact suspicious here. What may have seemed suspicious. Initially, ultimately is not because it is determined that he is wearing headphones, and he does take them out which would lead any reasonable person to conclude I suggest that he's couldn't hear because he was listening to music. What's your position on exactly when the Terry stop occurred. Well, we think the Terry stop occurred when the officer is yelling out, stop, he hears takes the headphones out and complies. You know the officer indicated that, you know, from jump when they first observed him, their intention was and they did stop him. The officer concedes that she intended to conduct a stop here and investigatory stop. And this was not a Request. This was not a Intent doesn't matter. Does it under Ren the officers intent and the fact that she said I'm planning to stop this dude. Doesn't actually bear either way on whether it's opposed to, as you say, consensual questioning. I think, you know, I think it's whether or not a reasonable person would believe that they're not free to leave that they are being stopped. I don't think the government argued below nor in their moving papers here that this was something less than a Terry stop and You did rely on the notion that she had formed a decision to stop this individual before the the observations, you know, before he was, for example, unresponsive to her calling out, but that's neither here nor there, isn't it. Well, just to me, Your Honor. This is a, you know, we're the facts that are obtained by the police are on a on a moving scale they're gathering more information as time goes on. And so their intention is relevant to show that it was a stop because whether or not I intend to stop someone I believe is relevant to the ultimate inquiry about whether or not you know they thought they were being stopped and then obviously the language used here is stop. So it's not, you know, it's not a debatable proposition that Mr. Jones believed he was being stopped, obviously, then he's being surrounded by the officers. So, we believe that you know when she first stopped him and he complies and takes the headphones out. That's when we have a Fourth Amendment event. And at that point in time we submit your honor that you know the police are in view of only only two relevant facts and shots are fired. And Mr. Jones is present proximate to the location of those shots which Delaney says is not enough that the presence in the area of a crime is not evidence that you're the person who committed the crime. I see that I'm coming up on my. Excuse me, when you refer to the area. The shot fire device was more precise than that wasn't it. Your Honor, as I said, I think we're prepared to concede that this was in a fairly precise location and Mr. Jones was proximate to that location exactly how proximate I think is a little unclear I think the officer said perhaps half a block or a block away by the time they pulled up 60 or 90 seconds had elapsed from the time of the shots the time. What was the district court's finding. I think the district court's finding was that it was at a particular block. That's what I thought 1300 confusing the cross streets but 1300 Trenton Street. There's obviously, again, a block is not a specific longitude and latitude at a particular point, it's, it's somewhat of an area, but but I don't think that that's particularly germane. You know we're prepared to concede of course that the police had reason to investigate a crime at a general fairly specific area where the crime had occurred. Certainly saw Mr. Jones proximate to that location again 60 or 90 seconds had elapsed and he wasn't at that precise precise spot where they believe the shots were fired at the time they pulled up. He was about half a block away, but his presence near where crimes certainly had occurred, we submit is not sufficient to support anything than a suggested consensual encounter, as opposed to what happened here which was a Fourth Amendment event. Let's see I only have about one minute left for a bottle and I'd like to reserve that with the court's permission. The police have stopped him on the theory that even if they didn't know or have suspicion that he was the shooter. He might have been a witness. Well, again, I don't think they could have, they could have made a request. And then that was our, they have done a Terry stop on that theory, just to question him Hey, we heard about shots Did you see anything. I don't believe so you're on I don't believe they could have stopped him under the guise of a Fourth Amendment stop anything above, as I said, a consensual encounter we submit violates the Fourth Amendment in terror here, because Terry doesn't extend to witnesses or because there wasn't reasonable suspicion on these facts that he might be a witness. I think, well, more the latter than the former your honor for the same reasons we believe that it was improper for them to stop him as a suspect, we submit that it would have been improper to stop him as a witness. Understand. Thanks. Thank you. I believe that that is my time you're on I've sort of lost track of here but I'll submit for rebuttal at this point, we'll give you some time for rebuttal if you if you'd like you don't need to take it but we'll, we'll give you a minute or two. Morning. Good morning, may it please the court at hobel or hobel hobel hobel. Thank you, Your Honor, may it please the court mark hobel for the United States. The police had reasonable articulable suspicion to stop and question the defendant was the only person seen leaving the immediate area the precise location where for gunshots adjustment fire. Now, the defendant is not disputing that gunshots were fired, and he's not disputing that the police had a precise location they were directed to by shot spotter. And I'd like to focus on the four key factors that together with rational inferences drawn from those facts provided police with reasonable articulable suspicion to believe that the defendant was involved in the shooting. And I just note here subjective intent is irrelevant under rent. We're talking an objective inquiry for reasonable articulable suspicion. The four key factors are briefly. First, the specific location which the defendant is now conceded was a precise block. The shot spotter directed the officers to second, then your immediate arrival on that block of police. After the shooting. Third, the fact that the defendant was the only person seen outside on that block when police arrived and forth the fact that he was walking, leaving the scene quickly when they arrived. Stop you and ask a question about that. The district judge found that he was moving away quickly. Right. Yes. Now Council says we should look at the recording and make our own judgment as to whether he was walking away quickly or not. Is that correct or are we bound by the factual determination by the district judge, unless we conclude it was a demonstrable error. That's right. This court is bound unless it can conclude that there was clear error in that finding and there's no basis for this court to find clear error in the courts finding in the district courts finding that the defendant was walking at a fast pace. I think the most important thing here is that the defendant stipulated to that fact at the trial that he was walking away at a fast pace when police first arrived. So, it's very difficult to find it probably impossible to find clear error with defendant is in fact admitted that disputed fact at trial. I'd also well I have two questions. One, what about Scott versus Harris, in which the Supreme Court said, we can look at the video. And we can make a determination and we can overcome any determination on the district courts part that a reasonable jury could disagree in looking at the video. Right. Well, I think, I think, first, as to the clear error standard this court can look at the video and see that to determine whether there was clear error and see that in fact officer Turner was hurrying after basically running after the defendant on the block so that is some evidentiary support for the district courts finding and second in terms of where the video shows the defendant. That's on that's after he has turned the corner on to Trenton place that's not where they first see him so there isn't any video of him to dispute the, the testimony of officer Turner. And with respect to the, to the walking away the key inference here I understand the defendant is disputing and saying this, this is not even if he was walking fast this isn't a factor that leads to reasonable suspicion. It's a common sense inference from human behavior that whoever was involved in that shooting the shooter would be trying to leave the scene quickly, and would not be trying to be trying not to attract undue attention so it's consistent and just a rational inference to see somebody walking quickly away and think they might have been involved, it's a reasonable inference to draw as to a judge pillar your point. Officer Turner wasn't sure whether he was wearing headphones, it was a possibility, but it was also a little bit odd that he wasn't responding to her, her calls for attention and she's allowed. That's a factor that that also contribute to reasonable articulable suspicion here and she's not required to rule out the, the innocent possibilities. Let me ask you a question. Suppose the defendant was sitting, standing on the street, smoking a cigarette, or sitting down, and they were and was the only person on the street. Would there be articulate articulate. Damn I can never pronounce it suspicion adequate to stop. I think that would be a that would be a closer case because it does take that a certain factor. I know it's closer what's your answer. I think the answer would be I think the answer would be yes here, but acknowledging that's a little bit more challenging because you still have a specific, the key factors is specific precise block where gunshots have just been detected arrival within 60 to 90 seconds of the shots. And here is the only person outside on this block in a residential neighborhood where you'd expect residents to be inside at 11, I guess 15pm. I'm standing out there, it's a little. Yeah, excuse me. What about the possibility of the shot came from one of the buildings inside. It's a, it's certainly a possibility, but the police weren't required to rule out all alternative possibilities before taking action under Terry I note that the fact that neighbors called in to report these gunshots makes it more likely that they that the gunshots were coming from outside because you had neighbors on either side of the 3500 block of 13th place southeast, who heard these gunshots. So, I didn't follow that I know you made that argument and, for example, if somebody were leaning out a window, and then pulling their head back in and closing the window neighbors would just as likely have called in or even if the shot took place inside a residence, people can hear it. I guess that that's the, is that the hypothetical you're responding to that it would be more muffled and therefore people on either side wouldn't have heard it and therefore wouldn't have called in. Right, Your Honor. Yes, Your Honor. So you're not responding to the scenario in which somebody leaned out a window and shot someone out of doors. That's right. And I think it's if somebody is leaning out a window and firing a gun out the window. I guess it would, it would have the same effect for the neighbors but the police who are familiar with this neighborhood and familiar with responding to how likely this is occurring out on the street than it is somebody leading out a window and firing at people down below or firing a gun out the window, but even so again again under under Terry they weren't. They didn't need to rule out all possibilities there were other alternative possibilities here. The person, the shot shooting could have been outside on the street, and the person could have gotten a car and and and sped away. That's about there's been a little bit of confusion about in the district court, back and forth I don't think the USA was able to answer this question but Terry doesn't authorize a stop of a potential witness does it. I don't believe this court has has so found there is some authority for that the DC Court of Appeals and the Williamson case that we cited upheld us a stop on those grounds but the district court didn't didn't agree with that proposition. We haven't argued it and certainly, you know, it's it's it's possible that that the defendant was a was a witness or a bystander but it wasn't. It wasn't necessary to rule those possibilities out there was reasonable articulable suspicion based on his location at the precise block where shot spot or heard the shots. Almost immediately after the shots were fired. The only one there and walking quickly away to believe that he was involved in the shooting himself, that he wasn't just a witness or a bystander. And you're not arguing that this was a just a consensual query, excuse me, sir, sir, there's been a shooting we want to talk to you. Can you stop. No, there was there was a show of authority to stop take out your headphones and he submitted to it by stopping and taking out his headphones I don't think we're disagreeing with with the defense minister as to the timing of the stop. So the, the, the, what the factors at the time of the stop there was reasonable articulable suspicion for the Terry stop to question him about the shots that had just been fired at the block here. And I just know I've spent, I've spent some time talking about alternative possibilities and acknowledging those possibilities and and repeated that the police weren't required to rule them out based on the reasonable articulable suspicion that they had here, especially when there's a serious violent crime they think has just been committed. That defendant concedes was committed a shooting. Somebody shooting, and that they see the suspect walking quickly away from the scene. They just required a minimal level of objective justification to make the stop and we believe they had that here so I guess unless one other question if I may about the shot spotter, and the, the timing, it seems like in this case the appellant has conceded that it was a very short amount of time between when the shot itself was fired and when the police officers showed up on the relevant block. But I wonder just as a matter of process. This was not a case in which the officers themselves saw the shot spotter or heard the shot spotter through the app. It had to be conveyed to them through a dispatcher. Is there any way that a defendant in such a case could probe the length of time that it takes or, you know, how much time to actually pin down, not just what we have here which is the time between the officers, getting the information from the dispatcher and Is there any way a defendant like how would defend and go about probing that and pinning that down. Um, yes, and I don't I don't know any reason why defending couldn't make an issue of that or argue that I just don't think the defendant in this case. Did that, you know, but I'm just wondering if there if there's a way to do it. It would you, I mean, unlike in civil litigation, you can't do a deposition of the dispatcher or the people who set the system up so you have to bring an expert in or I just just to be candid, Your Honor, I, I'm not sure I imagine that you could, and I don't necessarily want to want to speculate, but I think whether it's in whether it's trying to have an expert or just more cross examination of the officers or or bringing an officer witness, and I would And I know to just to support that the fact that they're already on scene. When they hear the dispatch from the from the residents from the neighbors calling 911 about the same gunshots so there's a really strong inference here that this was this was all very, very fast and that they My ask a question about technology is the shot spotter getting more and more accurate with respect to the precise location where the shot was fired. I, I just, I don't. There was the evidence in the record here was that the shot spotter provides the exact location and the exact number of gunshots with respect to the tech technology that wasn't developed in the record I can direct your honor to the to the You don't know whether it's getting more and more accurate. I don't, Your Honor. No. So, and unless the court has any further questions we would ask that the court to affirm the judgment of the district court. Thank you. Done. All right. Mr Lawler would you like any rebuttal. Yes, I'll, I'll keep talking until you tell me I can't or that I've won either. All right, that'll, I guess I'll take that. So your honor. Again, I think, you know, part of the issue here from our vantage point is, is the phraseology that the government uses precision. And then taking what we perceive to be the most innocuous fact which is walking in a residential neighborhood and somehow making that seem as if it's evidence of a crime. The government didn't mention you know this being a high crime area, although they argued that in their brief. But again, that is one of these loaded phrases does not bear any evidence as to this case because there's no dispute. We conceded all along that a crime had occurred. Now, I wouldn't say it's a serious violent crime because there's no evidence of assault of behavior here but again that's not really here or near here nor there, but I think the government uses this verbiage to take innocuous facts, try to string them together to make it seem as if this is evidence of a crime Mr Jones when it simply is not. What you have here is evidence of a crime, and Mr Jones being proximate to it, which we believe gives rise to the police investigating and asking him to consent to a consensual. That was redundant encounter. Instead of forcing their authority upon him and making him stop. We believe in the absence of articulable suspicion about actual facts that are evidence that Mr Jones committed a crime. There was no basis area honest we would ask the court to reverse the findings of the lower court in the conviction here. Thank you. And I recognize, Mr Lawler that you were appointed by the court to represent Mr Chauncey Jones, and we thank you for your, for your service and your briefing and your argument here today. It's my pleasure. Thank you. Cases submitted.
judges: Pillard, Katsas, Silberman